## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALEJANDRO GARCIA,
GUADALUPE GARCIA, and
JOSE GARCIA,

       *Plaintiffs*,

  vs.                                                    CASE NO. 09-02115-EFM

PALOMINO, INC.,
d/b/a LA MESA,
and FRANCISCO ONATE

      *Defendants.*

## MEMORANDUM AND ORDER

Plaintiffs, Alejandro, Guadalupe, and Jose Garcia, former employees of La Mesa restaurant in Lansing, Kansas, bring this action against Defendants, Palomino, Incorporated ("Palomino"), and Francisco Onate ("Onate"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. Plaintiffs claim that Defendants violated the FLSA's minimum wage and overtime provisions. Now before the Court is Plaintiffs' Motion for Sanctions (Doc. 42), Defendant Onate's Motion for Summary Judgment (Doc. 40), and Plaintiffs' Motion for Summary Judgment (Doc. 44). For the following reasons, the Court denies the parties' motions.

## II. BACKGROUND[1]

Defendant Onate is a resident of Iowa.  Over the past few years, Onate has founded eleven Mexican restaurants in Nebraska, Iowa, Kansas, Missouri, and Mexico.  Each of these restaurants is named La Mesa, but, according to Onate, each is individually incorporated, operated, and managed. The La Mesa restaurant in Lansing, Kansas, which is the one at issue in this case, is owned by Palomino.  Onate owns a forty-percent interest in Palomino, while Lorena Bautista and Antonio Onate own the remaining sixty-percent.  Oracio Palomino is the self-described general manager of Palomino.

According to Defendants, Oracio Palomino and Ruben Melgoza are responsible for running the day to day operations at the La Mesa restaurant located in Lansing.  Specifically, Mr. Melgoza is in charge of scheduling the servers, bussers, and kitchen workers.  He is also responsible for maintaining the employment records for the restaurant.  Every two weeks, Mr. Melgoza submits payroll summaries, which include the number of hours each employee works and their pay rate, to Heartland Payroll Company, the payroll processor that Onate and all of the La Mesa restaurants use. These summaries are based on notes that Mr. Melgoza makes throughout the previous two weeks in his notebook.  After the contents of these notes are transferred to the payroll summaries, they are discarded.

Plaintiffs are former employees at the Lansing La Mesa restaurant.  Plaintiff Alejandro worked as a server in the restaurant from 2002 until early 2009.  During that same time, Plaintiff

---

[1]In their response to Defendant Onate's motion for summary judgment, Plaintiffs object to many of Onate's factual statements because they included more than one fact.  While it is certainly the better practice to set forth only one fact for each factual statement, the Court does not read the local rules to require such a practice.  As a result, the Court deems those factual statement that are properly supported by the record and were objected to only on the grounds that they contain multiple facts uncontroverted.

Guadalupe was a server and cook in the restaurant.  Plaintiff Jose worked in the restaurant as a server from 2005 to early 2009.  As servers, Plaintiffs were paid $2.30/hr, which is the amount that Defendant Onate instructed Oracio Palomino to pay them.  In addition to their base pay, Plaintiffs also got to keep the tips they received.  However, Plaintiffs were required to contribute an amount equal to three-percent of their nightly sales to a tip pool operated by Defendants.  The proceeds of this tip pool were distributed by Mr. Melgoza to various other workers in the restaurant.[2]  Plaintiffs claim that some of these proceeds were improperly paid to employees who, under the governing law, were not eligible to receive such distributions, e.g., cooks, food preparers, and dish washers.

During their employment, Plaintiffs received a paycheck every two weeks.  Among other things, these checks noted their wage rate, the amount of money they had received in tips, and the number of hours they had worked in the past two weeks.  Believing that the hours stated on his paychecks did not accurately reflect the amount of time he had actually worked, Plaintiff Alejandro began writing down how much he worked each day in a journal he kept.[3]  For the most part, the entries Alejandro made in his journal conflict with the time recorded on the payroll summaries created by Mr. Melgoza.  Plaintiffs Jose and Guadalupe also contend that the amounts recorded in Defendants' payroll summaries do not accurately reflect the time they worked.

At some point, presumably at the end of 2008 or beginning of 2009, for reasons unexplained to the Court, Plaintiffs became unhappy with their employment at La Mesa.  Upon hearing that Plaintiffs were unhappy, Defendant Onate offered to transfer Plaintiffs to another La Mesa restaurant.  Plaintiffs rejected this offer and eventually quit sometime in January, 2009.  According to Plaintiff

---

[2]Defendants did not maintain records reflecting how much money was contributed to or distributed from this nightly pool.

[3]Plaintiff Alejandro maintained this journal from November 18, 2008, to January 10, 2009.

Jose, on the last day of his employment, Defendants gave him an employment handbook.  This handbook, which was drafted by Defendant Onate's wife, outlined the restaurant's expectations of its employees.  Plaintiff Jose did not read this book.

Following their departure from La Mesa, on March 5, 2009, Plaintiffs filed suit against Defendants, alleging that Defendants had violated the FLSA by failing to pay them minimum wage and overtime.  This matter is now before the Court on Plaintiffs' Motion for Sanctions (Doc. 42), Defendant Onate's Motion for Summary Judgment (Doc. 40), and Plaintiffs' Motion for Summary Judgment (Doc. 44).  For the reasons stated below, the Court denies the parties' motions.

### III. Plaintiffs' Motion for Sanctions

In their motion, Plaintiffs claim that Mr. Melgoza's practice of destroying the notebook paper that Defendants' employees' time records were initially recorded on after he had transferred such information to payroll summaries violates the record keeping requirements set forth in 29 U.S.C. § 211(c), 29 C.F.R. §§ 516.2(a)(7) and (c)(2), and 29 C.F.R. § 516.28.[4]  Based on this claim, Plaintiffs ask this Court to strike Defendants' defenses to Plaintiffs' claim for unpaid overtime, to rule that Defendants may not present evidence of the days and hours worked by Plaintiffs, to issue a jury instruction directing the jury to draw an adverse inference from the fact that Defendants intentionally destroyed documents relevant to Plaintiffs' claims while under a duty to preserve such documents, or to issue such other sanctions as the Court deems appropriate.

The Tenth Circuit has held that sanctions based on a destruction of the evidence theory are proper only when the moving party shows that the following elements are met: (1) the non-movant had a duty to preserve the documents in question; (2) the non-movant violated this duty; and (3) the

---

[4]Plaintiffs do not claim that Defendants destroyed these papers at a time when they knew or should have known that litigation was imminent.

non-movant's violation prejudiced them.[5]  The type of sanction that is warranted in a particular case depends on the non-movant's culpability level.[6]  For example, a severe sanction, such as an adverse inference instruction, is not warranted unless a showing of intentional destruction or bad faith has been made.[7]  Less severe sanctions, however, may be awarded if the movant shows that the non-movant was negligent in losing or destroying the evidence in question.[8]

Assuming, without deciding, that Plaintiffs can meet the first element,[9] Plaintiffs' motion nevertheless fails because Plaintiffs have not satisfied the second.  In order for the second element to be met, Plaintiffs must put forth evidence showing that Defendants violated the duty they owed to them.  The regulations and statute cited by Plaintiffs merely require that the employer maintain and preserve records showing the exact hours an employee worked each workday and the total hours he worked each workweek; they do not necessitate that every document that contains information on how long the employee worked be preserved.  Defendants have maintained and preserved records that show the hours Plaintiffs worked each workday and the total hours they worked each workweek.  As a consequence, Defendants did not violate the applicable duty.

To be sure, Plaintiffs have produced evidence that calls into question the accuracy of the records produced by Defendants – e.g., the records maintained by Plaintiff Alejandro, which conflict

---

[5]*See, e.g., Burlington N. & Sante Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

[6]*See Estate of Trentadue v. United States*, 397 F.3d 840, 862 (10th Cir. 2005).

[7]*See Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008).

[8]*See Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 1998 WL 68879 (10th Cir. Feb. 20, 1998).

[9]Plaintiffs have not pointed out, nor has this Court discovered, one Tenth Circuit case where the question of whether a record retention requirement set forth in a regulation or statute can satisfy factor one was addressed.  In every case cited by Plaintiffs, the relevant duty arose from the fact that the defendant knew or should have known that litigation was imminent.

with the one's provided by Defendants, and Ruben Melgoza's deposition testimony in which Mr.

Melgoza states that if an employee worked nine and a half hours one day and eight and a half the

next, he would write down on the form submitted to the payroll company that the employee worked

nine hours both days.  This evidence, though, does not establish that Defendants violated the record

keeping requirements set forth in the regulations and statute cited by Plaintiffs.  As a result, sanctions

are not warranted in this case, and Plaintiffs' motion is denied.

## IV.  Parties' Motions for Summary Judgment

### 1.  Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine

issue as to any material fact" and that it is "entitled to judgment as a matter of law."[10]  "An issue of

fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[11]  A fact

is "material" when "it is essential to the proper disposition of the claim."[12]  The court must view the

evidence and all reasonable inferences in the light most favorable to the nonmoving party.[13]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of

material fact.[14]  In attempting to meet this standard, the moving party need not disprove the

---

[10]Fed. R. Civ. P. 56(c).

[11]*Haynes v. Level 3 Commc'ns*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[12]*Id.*

[13]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[15]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[16]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[17]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[18]  Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[19]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[20]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[21]

## 2.  Analysis

As noted above, Defendant Onate and Plaintiffs have both moved for summary judgment. The Court will address these motions in turn.

---

[15]*Id.* (citing *Celotex*, 477 U.S. at 325).

[16]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[17]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[18]*Adler*, 144 F.3d at 671.

[19]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[20]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[21]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

A.  *Defendant Onate's Motion for Summary Judgment*

In his motion, Defendant Onate claims that he is entitled to summary judgment because he is not an employer under the FLSA.[22]  Specifically, he contends that he lacks sufficient control over the operations at the La Mesa restaurant in Lansing to be considered an employer.  In support of his contention, Defendant Onate points out that he lives in Iowa, only visits the restaurant once a month, and that Mr. Melgoza and Oracio Palomino are charged with the duty of running the day-to-day operations at the restaurant, including the hiring, firing, scheduling, disciplining, and compensation of the restaurant's employees.  In response, Plaintiffs cite to Oracio Palomino's statement that Onate told him how much to pay the servers, that Onate offered to transfer Plaintiffs to another restaurant when he found that they were unhappy, that Onate chose the payroll company and accountant that La Mesa uses, Onate has a forty-percent interest in the company that operates the Lansing La Mesa restaurant, and that Onate's wife wrote the employee handbook for the La Mesa restaurants.  Based on this evidence, Plaintiffs argue that Defendant's motion should be denied.

Section 203(d) of the FLSA states that "any person acting directly or indirectly in the interest of an employer in relation to an employee" is considered an employer.[23]  As is clear from the previous sentence, the FLSA's definition of an employer is much more expansive than traditional common law definitions.[24]  With that said, though, not every stockholder with significant ownership in a corporation or corporate officer is automatically an employer for purposes of the FLSA; rather, in

---

[22]Whether or not Onate is an employer is relevant because only employers can be held liable for violations of the FLSA.  *See* 29 U.S.C. §§ 206-207.

[23]29 U.S.C. § 203(d).

[24]*See Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)).

order for such individuals to be considered an employer, they must have "operational control of significant aspects of the corporation's day to day functions."[25]  To assist lower courts in making the determination of whether this rather nebulous requirement has been met, circuit courts have identified multiple factors they believe are relevant to the inquiry.  These factors include the individual's ownership interest in the corporation, the degree of control that the individual exhibits over the corporation's financial affairs, the individual's involvement in employee compensation decisions, the individual's control over employee work schedules or conditions of employment, and the individual's ability to affect an employee's employment relationship with the corporation.[26]

Considering the aforementioned factors, and viewing the evidence in the record in the light most favorable to Plaintiffs, the Court cannot conclude, as a matter of law, that Defendant Onate is not an employer.  Unlike the plaintiffs in the cases cited by Onate,[27] the plaintiffs in this case have presented evidence that Onate had control of significant aspects of the corporation's day to day functions.  For example, Plaintiffs' evidence indicates that Mr. Onate, who has a substantial ownership in the company that operates the La Mesa restaurant in Lansing, was responsible for setting the wage rate for servers at the restaurant.[28]  Furthermore, it suggests that Onate had the power

---

[25]*Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007); *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999); *Dole*, 942 F.2d 966; *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986).

[26]*See Chao*, 493 F.3d at 34; *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839, 845 (11th Cir. 2009) (citing *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008)); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  The Court is cognizant of the fact that some court's have also considered whether the defendant maintains employment records when making this determination.  However, the Court sees no reason to consider this factor in this context.  The relevance of such a consideration appears to be limited only to those instances when the court is determining whether an entity, as opposed to an individual, is the employee's employer.

[27]*See Perez*, 515 F.3d 1150; *Patel*, 803 F.2d 632; *Wirtz v. Pure Ice Co., Inc.*, 322 F.2d 259 (8th Cir. 1983).

[28]*See Freemon v. Foley*, 911 F. Supp. 326, 331 (N.D. Ill. 1995) (stating that the FLSA will apply to an individual if "he or she possesses control over the aspect of employment alleged to have been violated").

to make staffing decisions.  While it is true that it does not appear that Onate handled many of the day-to-day problems associated with operating the La Mesa restaurant in Lansing, this fact does not mandate summary judgment.[29]  Therefore, for the foregoing reasons, the Court denies Defendant Onate's motion.[30]

### B.  Plaintiffs' Motion for Summary Judgment

In their motion, Plaintiffs contend that they are entitled to summary judgment on both of their FLSA claims.  With respect to their minimum wage claim, Plaintiffs argue that summary judgment is warranted because Defendants failed to pay them minimum wage and the tip credit exemption set forth in 29 U.S.C. § 203(m) is not applicable, as Defendants did not give them notice that they were going to take advantage of this exemption, Defendants operated an invalid tip pool, and the amount that Defendants required Plaintiffs to pay in to the tip pool was excessive.  With respect to their overtime claim, Plaintiffs argue that summary judgment is appropriate because Defendants' employment records, which show that Plaintiffs were compensated for the overtime they worked, should be excluded and without such records Plaintiffs' deposition testimony that they were not compensated for many of the overtime hours they worked is uncontroverted.

Before discussing the merits of Plaintiffs' minimum wage claim, the Court deems it necessary to provide a little background on the law governing minimum wage.  The FLSA requires all employers engaged in interstate commerce to pay their employees a wage not less than the amount

---

[29]*See, e.g., Dole*, 942 F.2d at 966.

[30]*See Olivas*, 324 Fed. Appx. at 845 (finding that a jury issue existed as to whether the defendant was an employer despite the fact that the defendant did not determine the plaintiff's salary or working hours); *cf. Zheng v. Liberty Apparel Co.*, 556 F. Supp. 2d 284, 288-95 (S.D.N.Y. 2008) (denying the defendant's motion for summary judgment on the issue of whether the defendant was a joint employer for purposes of the FLSA because three out of the six relevant factors weighed in favor of finding that it was a joint employer).

set forth in 29 U.S.C. § 206(a)(1).[31]  Section 203(m) of this Act, though, carves out an exemption to this general rule.  This section allows an employer to pay its employees an hourly wage below the minimum wage if the following requirements are met: (1) the employee is a tipped employee, i.e., one who is "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips;"[32] (2) the wage paid exceeds $2.13 per hour; (3) the employee's tips make up the difference between the base wage and the minimum wage stated in § 206(a); (4) the employer has informed the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation; and (5) the employee retains all of his tips, except those that are paid into a pool of tips that is shared with employees who customarily and regularly receive tips.[33]  The employer has the burden of showing that the exemption is applicable.[34]  If it fails to make the requisite showing, the employer is liable for the difference between the amount it paid to its employees and the applicable minimum wage, regardless of whether the employee has received and retained wages and tips that together satisfy the minimum wage requirement.[35]

After reviewing the briefing and supplemental materials, the Court finds that Plaintiffs are not entitled to summary judgment on their minimum wage claim.  To begin with, a material issue of fact exists as to whether Defendants satisfied the fourth requirement.  While it is true that Defendants did

---

[31]*See* 29 U.S.C. § 206(a).

[32]29 U.S.C. § 203(t).

[33]*See* 29 U.S.C. § 203(m).

[34]*See Reich v. Priba Corp.*, 890 F. Supp. 586, 595-96 (N.D. Tex. 1995) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); *see also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4 (6th Cir. 1999) ("[A]n employer who invokes a statutory exemption from minimum wage liability bears the burden of proving its qualification for that exemption."); *cf. Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 657 (10th Cir. 1995) (stating that "[t]he employer has the burden of showing that its employees are exempt from the FLSA's overtime provisions").

[35]*See, e.g., Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994)).

not affirmatively tell Plaintiffs that they intended to take advantage of the exemption set forth in § 203(m), they did, according to Mr. Melgoza's deposition testimony and an affidavit he submitted,[36] hang up a poster discussing the minimum wage laws in an area that Plaintiffs routinely frequented. Furthermore, Defendants told Plaintiffs that they would make only $2.30/hr and Plaintiffs' pay stubs reflected this fact.  Based on these facts, the Court finds that a reasonable jury could conclude that Defendants informed Plaintiffs of their intent to treat tips as satisfying part of their minimum wage obligations.[37]  As a result, summary judgment on this ground is not proper.

The Court also finds that summary judgment is not proper on the ground that the tip pool operated by Defendants is invalid.  As alluded to above, a mandatory tip pool is invalid if its proceeds are paid to employees who do not customarily and regularly receive tips.  Unfortunately, beyond stating that " 'customarily and regularly' signifies a frequency which must be greater than occasional, but which may be less than constant,"[38] neither the language of the FLSA nor the relevant regulations provide much guidance on the issue of which employees may participate in a mandatory tip pool. However, legislative history and materials produced by the Department of Labor do provide some insight.  According to these sources, waiters/waitresses, busboys, and service bartenders are examples of employees who customarily and regularly receive tips, while dishwashers and chefs are examples

---

[36]The Court rejects Plaintiffs' contention that it should disregard this affidavit because it is in English and Mr. Melgoza testified during his deposition in Spanish.  Plaintiffs have not conclusively shown that Mr. Melgoza does not write or understand English.  As a result, the Court denies Plaintiffs' request.

[37]*Cf. Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310-12 (S.D. Fla. 2007) (finding, at the summary judgment stage, that the defendant had satisfied the notice requirement by hanging two signs that discussed the minimum wage laws in areas that its employees walked by daily and informing its employees that they would make only $2.15 plus tips), *summarily aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008).

[38]29 C.F.R. § 531.57.

of employees who do not.[39]  In cases where an employee "performs a variety of different jobs or duties, his or her status as one who 'customarily and regularly receives tips' [is to] be determined on the basis of his or her activities over the entire workweek."[40]  Thus, if an employee, in a typical workweek, regularly engages in activities that are similar to or the same as those usually performed by waiters/waitresses, busboys, and service bartenders, they are eligible to participate in the tip pool.

Based on this persuasive authority, and the relevant case law, which is scant, it appears there are two requirements that must be met in order for an employee's participation in a tip pool to be valid.  First, the employee, in a typical workweek, must regularly engage in activities that are similar to or the same as those usually performed by employees who customarily and regularly receive tips.  Second, the employee must have been engaged in such activities at the time they participated in the tip pool.[41]

Here, Plaintiffs claim that the tip pool is invalid because cooks, food preparers, and dishwashers participated in it.  Defendants' managers, Oracio Palimino and Ruben Melgoza, have admitted that dishwashers and food preparers at the La Mesa restaurant in Lansing sometimes participated in the tip pool operated by Defendants.[42]  Therefore, the question at this stage in the

---

[39]See S. Rep. No. 93-690, at 43 (1974); Dept. Labor Field Operations Handbook § 30d04(a).

[40]See DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997).

[41]See Myers, 192 F.3d at 548-51 (finding that wait staff employees who were instructed by their employer on busy nights to make salads, as opposed to wait tables, could not participate in the tip pool).

[42]Defendants' attempt to override their managers' admissions by submitting an affidavit produced by one of its servers, which implies that members of the kitchen staff did not participate in the tip pool, is unpersuasive.  The managers, not the server, were responsible for distributing the tip pool's proceeds.  While it is admitted that dishwashers and food preparers sometimes participated in the tip pool, a question of fact still remains as to whether cooks did.  Compare Doc. 56-2, Melgoza's Dep., p. 10 ("Well, for example, you know, if that day we were more busy and everybody worked more and there was a more amount [sic] for the tips, let's say $100 extra and, for example, let's say a kitchen worker worked very hard and helped out in everything, then, yes, I would say I'm going to give it to them.") with Doc. 44-8, Palomino's Dep., p. 9 (stating that the tip money given to the cooks did not come from the tip pool).

litigation is whether a reasonable jury could, based on the test enunciated above, find that these employees' participation in the subject tip pool was valid. Although it is an extremely close call, the Court believes, construing Defendants' evidence in a light most favorable to them, that a reasonable jury could. Oracio Palomino has testified that the dishwashers performed busboy like duties sometimes and that food preparers assisted them in performing such duties when they "did not have anything to do." Furthermore, Palomino has testified that these workers only participated in the pool when they performed such duties. Therefore, in light on this evidence, the Court concludes that summary judgment is not proper on the ground that the tip pool was invalid.

Lastly, the Court finds Plaintiffs' argument that Defendants' tip pooling arrangement was invalid because the amount that waiters/waitresses were required to tip out, three percent, was excessive. Nothing in the FLSA or the applicable federal regulations supports the application of an excessiveness requirement. Recognizing this fact, Plaintiffs direct the Court to an opinion letter issued by the Administrator of the Wage and Hour Division of the Department of Labor in the late 1970s,[43] which states that if an employer's tip pool requires a tip out that is greater than a certain percentage of the employee's total tips, it is invalid.[44] The Sixth Circuit has already rejected the argument that this letter establishes an excessiveness requirement.[45] This Court agrees with the Sixth

---

[43]*See* Wage-Hour Administrator Opinion WH-468 (Sept. 5, 1978).

[44]Plaintiffs also cite to a case from the Eastern District of Arkansas, *Dole v. L & J, Inc.*, 1990 WL 250980 (E.D. Ark. 1990). The holding in *Dole*, though, does nothing for Plaintiffs' argument because the court in that case merely applied the customary or reasonable language found in the letter without providing any rationale for why it or the Administrator were justified in engrafting such a requirement into the statute.

[45]*Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 303 (6th Cir. 1998).

Circuit.  As a result, the Court finds that Defendants' tip pool was not invalid because it required a three-percent tip out.[46]

In sum, the Court concludes that summary judgment is not warranted on Plaintiffs' minimum wage claim.  Because summary judgment is not warranted, the Court denies Plaintiffs' request for summary judgment on their damages arising from this claim and declines to address Plaintiffs' contention that Defendants' alleged violation of the FLSA was willful.

With respect to their overtime claim, the Court also finds that summary judgment is not proper.  Plaintiffs' argument that they are entitled to summary judgment on this claim is premised entirely upon their belief that Defendants should not be able to present the payroll summaries they have maintained as a sanction for allegedly violating various record-keeping requirements.  As noted above, the Court does not find that Defendants have violated any of the cited record-keeping provisions.  Thus, the payroll summaries should not be excluded.  As a consequence, there is conflicting evidence on the issue of whether Plaintiffs are entitled to overtime compensation. Because there is conflicting evidence, summary judgment is not proper on this claim or the issues of damages and willfulness.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Sanctions (Doc. 41) is hereby DENIED

**IT IS FURTHER ORDERED** that Defendant Onate's Motion for Summary Judgment (Doc. 40) is hereby DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 43) is hereby DENIED.

---

[46]The Ninth Circuit has also taken the position that there is no customary and reasonable requirement.  *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 n.12 (9th Cir. 2010).

**IT IS SO ORDERED**.

Dated this 7th day of September, 2010.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-16-